Argued and submitted November 2, 1998, judgment of Tax Court affirmed
October 15, 1999

KING ESTATE WINERY, INC.,
an Oregon corporation,
*Appellant,*

*v.*

DEPARTMENT OF REVENUE,
*Respondent.*

(OTC 3939; SC S44757)

988 P2d 369

Richard Baroway, of Garvey, Schubert & Barer, Portland, argued the cause for appellant. With him on the briefs was David L. Canary.

Joseph A. Laronge, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Douglas M. Adair, Assistant Attorney General.

Timothy R. Volpert and Benjamin G. Wolff, of Davis Wright Tremaine, LLP, Portland, filed a brief on behalf of *amicus curiae* Oregon Wine Growers' Association.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, Leeson, and Riggs, Justices.**

VAN HOOMISSEN, J.

Riggs, J., dissented and filed an opinion.

---

** Kulongoski, J., did not participate in the consideration or decision of this case.

**VAN HOOMISSEN, J.**

This case is before the court on direct appeal from a judgment of the Oregon Tax Court. King Estate Winery, Inc. (taxpayer) appeals the denial of a property tax exemption for tangible personal property used in its winery, contending that the property is exempt under ORS 307.400(2). The Tax Court disagreed and entered judgment for Department of Revenue (the department). *King Estate Winery, Inc. v. Dept. of Rev.*, 14 OTR 169 (1997). For the reasons that follow, we affirm the judgment of the Tax Court.

We take the following undisputed facts from the Tax Court's opinion:

"King Estate Winery and King Estate Vineyards are owned by Edward J. King, Jr., and managed by the same officers and directors in an integrated operation. Grapes grown in the King Estate Vineyards and grapes from surrounding vineyards are processed by the winery into wine. The vineyard and the winery are adjacent to each other and located in an exclusive farm use (EFU) zone in Lane County.

"The winery building, containing approximately 110,000 square feet, houses a crush pad and equipment used for stemming, crushing, fermenting, storing, and bottling the wine. There is also a laboratory for analysis, a dining room, and guest facilities. The dining room and guest rooms, like the tasting room, are used to entertain guests and clients to promote the sale of the wine.

"The tangible personal property in question falls into different classes. Class 6 property consists of barrels, racks, rollers, bungs, staves, portable roto dumps, fume hoods, hoses, fittings, pumps, valves, tanks, seals, washers, and other moveable equipment used to stem and crush the grapes, filter the juice, and ferment and store the wine. Class 9 property consists of furniture and furnishings in the dining room and guest rooms, including bookcases, tables, china, silverware, and chairs. Class 12/14 property consists of computer equipment and related equipment used for making wine, keeping fermentation records, inventory control, sales, accounting, and bookkeeping. Class 15 property consists of rolling stock such as fork lifts, scissor lifts, and

an electric generator. Finally, there are materials and supplies constituting both inventory and noninventory items."

*King Estates Winery,* 14 OTR at 170-71.

The Lane County Department of Assessment and Taxation assessed the subject property at its full real market value for the 1994-95 tax year. Taxpayer appealed to the department. Although taxpayer did not identify explicitly the subsection of ORS 307.400 under which it claimed an exemption, we understand taxpayer's argument to be that it was entitled to an exemption under ORS 307.400(3)(c). The department denied the exemption. Taxpayer appealed to the Tax Court and moved for summary judgment. The Tax Court denied the motion, concluding that taxpayer's "machinery and equipment utilized in a winery is not farm machinery and equipment and does not qualify for exemption from property taxes under ORS 307.400." *King Estates Winery,* 14 OTR at 175. The court thereafter entered judgment in favor of the department, and taxpayer appealed to this court. ORS 305.445.

■ At issue is whether the exemption in ORS 307.400 applies to taxpayer's property used to process and sell wine. This appeal presents a question of law concerning the interpretation and application of a statutory provision to undisputed facts. We review *de novo.* ORS 305.445 (1995). *See Delta Air Lines v. Dept. of Rev.,* 328 Or 596, 603, 984 P2d 836 (1999) (*de novo* standard of review set out in ORS 305.445 (1995) applies to cases filed in the Tax Court before September 1, 1997).

■ Taxpayer contends that the Tax Court erred in entering judgment in favor of the department. Taxpayer argues that, under ORS 307.400, which grants a personal property tax exemption for farm equipment and machinery, ORS 215.203(2)(a), which defines "farm use" for land use purposes, and this court's decision in *Craven v. Jackson County,* 308 Or 281, 779 P2d 1011 (1989), taxpayer's machinery and equipment used in wine making operations and wine sales qualify for exemption. The department responds that taxpayer's property does not fit the definition of "inventory" under ORS 307.400 and, therefore, fails to qualify for an

exemption. For the reasons that follow, we agree with the department.

ORS 307.400 provides, in part:

"(2) All inventory shall be exempt from ad valorem taxation.

"(3) As used in subsection (2) of this section, 'inventory' means the following tangible personal property:

"(a) Farm machinery and equipment used primarily in the preparation of land, planting, raising, cultivating, irrigating, harvesting or placing in storage of farm crops; or

"(b) Farm machinery and equipment used primarily for the purpose of feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or bees or for dairying and the sale of dairy products; or

"(c) Farm machinery and equipment used primarily in any other agricultural or horticultural use or animal husbandry or any combination thereof[.]"

The statute does not define the terms "farm machinery and equipment" or "agricultural or horticultural use."

We proceed to interpret the legislature's intent in enacting ORS 307.400(3)(c). ORS 174.020; *see PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993) (establishing template for determining legislative intent in enacting statutes). We analyze the text and context of ORS 307.400(3)(c). *See PGE*, 317 Or at 610-11 (in determining legislative intent, court examines statutory text and context, which includes other provisions of statutes and related statutes).

ORS 307.400 sets out several categories of tax exemptions. "All inventory" constitutes one of those categories. ORS 307.400(2). As relevant, ORS 307.400(3)(c), under which taxpayer seeks exemption, defines "inventory" as: (1) tangible personal property; (2) that is farm machinery and equipment; and (3) that is used primarily in any other agricultural or horticultural use. The property at issue is "tangible personal property." The remaining elements are at issue in this case. First, is tangible personal property that is used

primarily to make and sell wine *"farm* machinery and equipment?"* (Emphasis added.) Second, is the operation of a winery an "agricultural or horticultural use?"

We begin with the text of ORS 307.400(3)(c). No provision in ORS 307.400 defines "farm machinery and equipment" or "agricultural or horticultural use." Therefore, we give those words of common usage their plain, natural, and ordinary meaning. *PGE*, 317 Or at 611. In this case, we first look to the dictionary definition of "farm."

■ The plain, natural, and ordinary meaning of the word "farm" is "a piece of land held under lease for cultivation" or "a plot of land devoted to the raising of domestic or other animals." *Webster's Third New Int'l Dictionary*, 824 (unabridged ed 1993). Based on the plain, natural, and ordinary meaning of the word "farm," we infer generally that "farm machinery and equipment" means machinery and equipment used to cultivate farm land or to raise animals. None of the tangible personal property for which taxpayer seeks exemption is used to cultivate farm land or to raise animals. For example, taxpayer seeks exemption for fermenting barrels, laboratory equipment, an armoire, a bed, a candelabra, and a computer. None of those items, or any other items for which taxpayer seeks exemption, fit within the ordinary meaning of "farm machinery and equipment," because they do not involve cultivating farm land or raising animals.

We also consider the meaning of "farm machinery and equipment" in the context of other provisions of ORS 307.400, beginning with provisions of ORS 307.400 that use the word "farm." The only provisions of ORS 307.400 that use that word are found in ORS 307.400(3). We can infer legislative intent with respect to the meaning of the word "farm" from the described *uses* of "farm machinery and equipment" allowed under ORS 307.400(3).

Farm machinery and equipment is exempt from taxation under ORS 307.400(3)*(a)* if it is used primarily in the natural progression of crop cultivation: "the preparation of land, planting, raising, cultivating, irrigating, harvesting or placing in storage of farm crops * * *." That list of uses does not include the *processing* of farm crops; neither does it

include the *sale* of farm crops or the sale of *processed* farm crops.

ORS 307.400(3)*(b)* also uses the term "farm." ORS 307.400(3)(b) expands the plain, natural, and ordinary meaning of "farm," based on the uses allowed for "feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or bees or for dairying and the sale of dairy products[.]" Thus, ORS 307.400(3)(b) allows an exemption for a greater range of uses than just machinery and equipment used to *raise* animals on land, because ORS 307.400(3)(b) allows the exemption for farm machinery and equipment used primarily for the "sale of, or the produce of" certain animals, and for "dairying and the sale of dairy products." However, despite the broader range of uses allowed in ORS 307.400(3)(b), we are not persuaded by that contextual fact alone that the legislature intended a winery operation to be a "farm" for purposes of the exemption allowed by ORS 307.400. We note that ORS 307.400(3)(b) does not pertain to *crops* but, instead, to *animals* and *animal products*. If the legislature had intended to exempt machinery and equipment used to make and sell wine, such as fermenting barrels and candelabras, then it could have included a reference to the processing and selling of crops in ORS 307.400(3)(a) (which refers to "farm crops" only). Alternatively, the legislature could have included grape processing or grape-product selling (*i.e.*, wine processing or wine selling) specifically in another provision of ORS 307.400(5) (which exempts specific personal property without use of the phrase "farm machinery and equipment").

In our effort to discern legislative intent in the phrase "farm machinery and equipment," we broaden our contextual scope and look to the other provisions of ORS 307.400. All of the exemptions in ORS 307.400, with the exception of those in ORS 307.400(3)(b) discussed above, correlate with the plain, natural, and ordinary meaning of "farm," even those that do not use the word "farm." For example, ORS 307.400(1) exempts "[l]ivestock, poultry, fur-bearing animals and bees." ORS 307.400(5)(a) exempts "[f]rost control systems used in agricultural or horticultural activities carried on by the farmer." ORS 307.400(5)(b) exempts

"[t]rellises used for hops, beans or fruit or for other agricultural or horticultural purposes." ORS 307.400(5)(c) exempts "[h]op harvesting equipment, including but not limited to, hop pickers." ORS 307.400(5)(e) exempts "[e]quipment used for the fresh shell egg industry that is directly related and reasonably necessary to produce, prepare, package and ship fresh shell eggs from the place of origin to market * * *." ORS 307.400(6) exempts particular equipment "used in connection with the operation of the field burning smoke management program" established by statute. Finally, ORS 307.400(3)(d) uses the word "farm," exempting certain tools, machinery and equipment used in the maintenance and operation of "farm machinery, equipment and other real and personal farm improvements" that, in turn, are used "primarily in the animal husbandry, agricultural or horticultural activities * * *." All the aforementioned exemptions in ORS 307.400 pertain to cultivating crops on land or to raising animals on land, which is how a "farm" ordinarily is defined. Thus, between the plain meaning of the word farm and the contextual implications of ORS 307.400, we find no legislative intent to include machinery and equipment used in fruit processing and fruit-product selling as part of the definition of "farm machinery and equipment."

Despite the fact that the plain meaning of "farm" and the contextual meaning of "farm" do not include a winery, taxpayer argues that a winery meets the statutory definition of a "farm." Taxpayer reasons that land use statutes should constitute part of the context of ORS 307.400, that the land use statutes list a winery as a permissible use of land in an EFU zone and, therefore, that the legislature intended a winery to be a "farm" for tax exemption purposes.

■ In *Craven*, this court was asked to decide whether a proposed winery and accompanying retail activity was a lawful conditional use in an exclusive farm use zone. The court stated:

> "When interpreting and applying the statutes in effect at the time of [applicant's] application for a [conditional use permit], a local land use agency or LUBA could reasonably conclude, based on the statutes, that a vineyard is farm use and that the winery and tasting room are either farm use or commercial activity in conjunction with farm use."

*Craven*, 308 Or at 289. The quoted passage is *dictum* that is not supported by the facts in *Craven*. Moreover, *Craven* was a land use case, not a tax case. Land use laws reflect different policies than tax laws. The special assessment statutes relating to farm land specifically refer to ORS 215.203(2)(a) as the source for the definition of "farm use." ORS 307.400, the personal property exemption statute at issue here, makes no specific reference to a definition of "farm machinery and equipment," neither does that statute refer to the definition of "farm use" in ORS 215.203(2)(a). We conclude that ORS 215.203(2)(a) and *Craven* have no application in determining whether taxpayer qualifies for a tax exemption under ORS 307.400(3)(c). Accordingly, taxpayer's reliance on *Craven* is misplaced; Oregon land use laws are not relevant to a resolution of the issue presented in this case.

Taxpayer argues that, to satisfy the "agricultural or horticultural use" element of ORS 307.400(3)(c), subparagraph (c) (defining exempt inventory as "farm machinery and equipment used primarily for *any other* agricultural or horticultural use") indicates a legislative intent to combine the *uses* in subparagraph (b) (farm machinery and equipment used to process and to sell) with the *subject matter* in subparagraph (a) (crops). In other words, taxpayer asserts that the wording "any other agricultural or horticultural use" in subparagraph (c) was intended to liberate the specificity of subparagraphs (a) and (b). We disagree.

■ As a matter of statutory interpretation, we are not convinced that the legislature intended machinery and equipment used in the operation of a winery to be "any other agricultural or horticultural use," as required by ORS 307.400(3)(c). Taxpayer interprets subparagraph (c) as blending together the *uses* and the *subject matter* listed in subparagraphs (a) and (b). However, such an interpretation would violate the rule that use of a term in one section and not in another section of the same statute indicates a purposeful omission. *See PGE*, 317 Or at 611 (stating principle). The use of the terms "sale," "produce," "products, or the produce of animals" and "dairying" in subparagraph (b), which relates only to animals, and the *absence* of those terms in subparagraph (a), which relates only to crops, indicates that the legislature did not intend to exempt equipment used for the

processing of a crop into another product, or to exempt equipment used for the sale of crop products, in either subparagraph (a) *or* (c). If the legislature had intended to include machinery and equipment used *to process* fruit and *to sell* the fruit product, then it easily could have included those uses in subparagraph (a), as it did in subparagraph (b) for dairy products. *See Oregon Business Planning Council v. LCDC*, 290 Or 741, 749, 626 P2d 350 (1981) ("Ordinarily, when the legislature includes an express provision in one statute, but omits such a provision in another statute, it may be inferred that such an omission was deliberate."). Taxpayer's interpretation of subparagraph (c) as a "broad catchall provision" that was intended to blend together subparagraphs (a) and (b) renders the specificity that defines the scope of subparagraphs (a) and (b) meaningless.

Besides the limited and specific uses allowed in ORS 307.400(3)(a) and (b), which indicate legislative intent not to allow an exemption for the processing of crops, or for the sale of processed crops, we conclude that the operation of a winery does not constitute "agricultural or horticultural use," as required by ORS 307.400(3)(c). We are not persuaded that the legislature intended the processing and sale of grapes to be an "agricultural or horticultural use," based on the plain, natural, and ordinary meanings of "agriculture" and "horticulture." "Horticulture" is defined as "the cultivation of an orchard, garden, or nursery on a small or large scale: the science and art of growing fruits, vegetables, flowers or ornamental plants." *Webster's New Third Int'l Dictionary* at 1093. "Agriculture" is defined as "the science or art of cultivating the soil, harvesting crops, and raising livestock: HUSBANDRY, FARMING[;] the science or art of the production of plants and animals useful to man and in varying degrees the preparation of these products for man's use and their disposal." *Id.* at 44. Neither the definition of "agriculture" nor the definition of "horticulture" includes the processing of a crop into another product or the sale of that product.

Although the dictionary definition of "agriculture" is ambiguous due to the phrase "in varying degrees," we do not find the dictionary definition of "agriculture" supportive of taxpayer's assertion that the legislature intended equipment used to operate a winery to be an "agricultural * * * use."

Rather, we conclude that the dictionary definition of "agriculture" is consistent both with the plain definition of a "farm" and with the contextual meaning of a "farm," as discussed above.

Based on the text of ORS 307.400(3)(c) and the context of other provisions of ORS 307.400, we conclude that tangible personal property used to make wine and to sell wine is not "[f]arm machinery and equipment used primarily in any other agricultural or horticultural use" for tax exemption purposes within the meaning of ORS 307.400(3)(c).

It follows that the Tax Court did not err in holding that taxpayer's machinery and equipment utilized in its winery are not farm machinery and equipment within the meaning of ORS 307.400, and, therefore, do not qualify for exemption from property taxes under ORS 307.400.

The judgment of the Tax Court is affirmed.

**RIGGS, J.**, dissenting.

I respectfully dissent. Although I agree with the majority that neither Oregon's land use laws nor *Craven v. Jackson County*, 308 Or 281, 779 P2d 1011 (1989), bears on the resolution of this case, I disagree with the majority's interpretation of ORS 307.400(3)(c).

ORS 307.400(3)(c) provides that "[f]arm machinery and equipment used primarily in *any other* agricultural or horticultural use * * * or any combination thereof" shall be exempt from taxation.[1] (Emphasis added.) ORS 307.400(3)(a) and (b), which contain categories of activities in which the farm machinery and equipment used are exempt, must be considered when interpreting the words "any other," as well as "farm machinery and equipment" and "agricultural or horticultural use." *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (noting that in examining context of statutory provision, courts must include other provisions of same statute); *Vannatta v. Keisling*, 324 Or 514, 533, 931 P2d 770 (1997) ("Under the doctrine of *ejusdem generis*, a nonspecific or general phrase that appears

---

[1] The majority correctly notes that ORS 307.400 does not define the terms "farm machinery and equipment" and "agricultural or horticultural use."

at the end of a list of items in a statute is to be read as referring only to other items of the same kind.").

The simple growing and harvesting of crops and the simple raising and managing of animals are not the only activities listed in ORS 307.400(3)(a) and (b). ORS 307.400(3)(b) expressly lists "[f]arm machinery and equipment used primarily * * * for *dairying and the sale of dairy products*" as an exempt category. (Emphasis added.) The dictionary defines "dairying" as "the business of conducting a dairy." *Webster's Third New Int'l Dictionary*, 570 (unabridged ed 1993). "Dairy" is defined in part as "the department of farming or of a farm that is concerned with the production of milk, butter, and cheese." *Id.* Thus, ORS 307.400(3)(b) exempts all farm machinery and equipment used for processing raw milk. The wording "the sale of dairy products," as well as "[the] sale of, or the produce of, livestock, poultry, furbearing animals or bees" in ORS 307.400(3)(b) exempts all farm machinery and equipment used in the sale of and, in my view, the promotion of those items.

The majority attempts to limit the processing and selling references in ORS 307.400(3)(b) to animals and animal products. The majority reasons that ORS 307.400(3)(a) (which the majority finds is a more narrowly written statute) pertains to crops, whereas ORS 307.400(3)(b) pertains to animals and animal products. Thus, the broader range of uses that the majority views is allowed in ORS 307.400(3)(b) does not carry over to crop uses under ORS 307.400(3)(c).[2] Under that view, however, there is little need for ORS 307.400(3)(c).

In ORS 307.400(3)(b), the legislature included equipment used in *processing* raw farm products and in the *sale of* the end products as exempt property. That cannot be ignored when interpreting what farm machinery and equipment is exempt under the phrase "any other agricultural or horticultural use * * * *or any combination thereof*" in ORS 307.400(3)(c). (Emphasis added.) By expressly including

---

[2] The majority suggests that the legislature could rewrite ORS 307.400 to include wine making and wine selling as specific exemptions, thus avoiding the problem at issue here. Of course that is true. That another sort of legislative fix might conceivably be available does little to inform the statutory interpretation required in this case.

equipment used in processing and selling, the legislature has indicated that such activities are "other agricultural or horticultural" uses. Processing milk into cheese, in my mind, cannot be distinguished meaningfully from processing grapes into wine. Both activities involve taking a raw farm product and converting it into a marketable good. Both activities definitionally and necessarily involve farm machinery and equipment used for farming, *processing*, and *selling* farm products. Accordingly, ORS 307.400(3)(c) should be interpreted to exempt the inventory used in producing, harvesting, processing, and selling farm products if the taxpayer conducts those activities on farm premises.

There is, in my view, an equally compelling flaw in the majority's interpretation. The majority assumes without discussion that "farm" modifies both "machinery" and "equipment" in the phrase "farm machinery and equipment." *King Estate Winery v. Dept. of Rev.*, 329 Or at 419. That is incorrect. The failure to insert the word "farm" before "equipment" evinces a legislative intent for a broader exemption than the majority contemplates. *See* ORS 174.010 (providing that courts may not insert what has been omitted from statute). The exemption of mere "equipment," unmodified by the word "farm," is consistent with the statute's references to selling livestock and dairy products, because equipment used in selling products would include nonfarm items, such as computers, cash registers, and, perhaps, decorative items that are used to sell the farm products on-site. Because I believe that the plain reading of ORS 307.400(3) leads to the conclusion that the legislature did not intend for "equipment" to be modified by "farm," I need not inquire further. *See PGE*, 317 Or at 611 (stating that further inquiry is unnecessary when legislature's intent of statute is clear from text and context). If, on the other hand, my reading of the statute creates an ambiguity, then the majority's task is incomplete. It should consider legislative history to complete its statutory analysis. *See id.* at 611-12 (mandating consideration of legislative history when interpreting ambiguous statute).

The parties do not dispute that the ultimate purposes of the equipment for which taxpayer seeks an exemption were to process and to sell wine. Nor do the parties dispute that the taxpayer used that equipment on farm

premises. For the reasons explained above, I would hold that, under these facts, the equipment used in the wine making here is exempt from ad valorem taxation under ORS 307.400(3)(c). I therefore dissent.