In the Matter of the Rejection of
Applicant Gerald E. Phelan's Tax
Credit Applications Numbers TC-3511 and TC-3954
by the Environmental Quality Commission.

Gerald E. PHELAN,
*Respondent,*

*v.*

ENVIRONMENTAL QUALITY COMMISSION
OF OREGON and
Oregon Department of Environmental Quality,
*Appellants.*

(93C-11488; CA A88988)

917 P2d 1029

John T. Bagg, Assistant Attorney General, argued the cause for respondent. With him on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Robert L. Engle argued the cause for respondent. With him on the brief was Engle & Schmidtman.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Defendants, the Environmental Quality Commission of Oregon (the commission) and the Oregon Department of Environmental Quality (the department), appeal a stipulated judgment reversing the commission's rejection of plaintiff's applications for tax credit certificates. The sole issue on appeal is whether plaintiff is entitled under ORS 468.150 to pollution control facility tax credit certificates.[1] We reverse.

Before discussing the facts of this case, a brief discussion of the pollution control facility tax credit program is helpful. Pollution control facilities are generally devices and structures that reduce solid waste or air, water or noise pollution. ORS 468.155. They originally became eligible for tax relief in 1967. Or Laws 1967, ch 592. The first step in obtaining tax relief is to apply for a certificate from the commission. The commission and the department administer the certification program under the provisions of ORS 468.155 to ORS 468.190. Those statutes provide, *inter alia,* for the commission to determine whether a facility qualifies as a pollution control facility defined under ORS 468.155. ORS 468.170-(4)(a). The commission must also determine what portion of the actual cost of a facility is allocable to pollution control. ORS 468.170(1). One of the factors used to determine the allocable portion is the applicant's return on investment from the facility. ORS 468.190. As the income generated by a facility increases, the portion of actual cost allocable to pollution control decreases. OAR 340-16-030. If the facility generates too much income, the portion allocable to pollution control is reduced to zero and the application is rejected. *Id.* If the facility does not generate too much income and the commission

---

[1] This court has jurisdiction to consider controversies concerning the *certification* of pollution control facilities. ORS 468.110; ORS 183.500; *Hayden Island v. Dept. of Env. Quality,* 258 Or 597, 598, 484 P2d 1106 (1971). In the trial court's stipulated judgment and in the parties' briefs, the issue has sometimes been framed as whether plaintiff is entitled to a *tax credit.* Because the Oregon Tax Court is "the sole, exclusive and final judicial authority for the hearing and determination of all questions of law and fact arising under the tax laws of this state," ORS 305.410(1), we do not have jurisdiction to determine whether plaintiff is entitled to a tax credit. Our decision is limited to issues concerning the certification only. We discuss tax law only for the purpose of resolving the controversy concerning the certificates.

determines that it meets the other statutory requirements, it must issue a certificate. ORS 468.170(1). That certificate, in turn, allows the holder the option of either a property tax exemption or an income tax credit.[2] ORS 468.170(5). In order to claim the tax credit, the holder must also meet the requirements of *former* ORS 316.097.

ORS 468.150 adds "alternative methods for field sanitation and straw utilization and disposal" to the list of qualified pollution control facilities. That statute was part of a 1975 bill aimed at reducing pollution from open field burning. Or Laws 1975, ch 560, § 15. One of the alternative methods for field sanitation and straw utilization and disposal involves straw storage sheds. The storage sheds keep the straw clean and dry, maintaining the straw's quality so it can be eventually shipped overseas. That prevents the need for burning the straw and thus reduces air pollution.

Plaintiff built two grass straw storage sheds at a total cost of about $386,000. He completed the first shed in 1990 and the second in 1992. Plaintiff then leased both sheds to Gerald Phelan, Inc., a corporation wholly owned by plaintiff and his wife. The corporation actually operated the storage sheds. Plaintiff wanted to claim the cost of the sheds as credits on his personal income tax return. Therefore, in 1991 and 1993, plaintiff applied to the commission for certification of the sheds as pollution control facilities.[3] He filed the applications in his own name. In April 1993, the commission rejected the applications because the corporation's financial statements showed that the return on investment from the sheds was too high to qualify for certification under ORS 468.155 to ORS 468.190. Plaintiff then sought to have his

[2] The property tax exemption is provided under ORS 307.405. The statutory authority for the income tax credit depends on the type of taxpayer claiming the credit. As originally enacted, the personal income tax credit was found in ORS 316.097, and the corporate excise tax credit was found in ORS 317.116. The corporate income tax credit was found in *former* ORS 318.030 (since renumbered ORS 318.031 by Or Laws 1983, ch 162, §§ 45, 46). In 1993, the personal income tax and corporate excise tax credits were repealed and then combined and renumbered ORS 315.304. Or Laws 1993, ch 730, §§ 29, 30. Because plaintiff is ultimately seeking a personal income tax credit, and because the parties have stipulated that the law applicable to this controversy is that in effect in May 1992, we will refer to the tax relief allowed under *former* ORS 316.097.

[3] Application numbers TC-3511 and TC-3954.

individual income used to determine the return on investment. Although his individual income from the facility was low enough to obtain certificates, the commission determined that he is not otherwise eligible because, as a lessor, he does not operate the storage sheds.

Plaintiff petitioned for judicial review of the commission's rejection, arguing that he is entitled to a certificate in his individual capacity under ORS 468.150 rather than ORS 468.155 to ORS 468.190. Defendants then moved for summary judgment arguing that, because plaintiff does not operate the storage sheds, he is not eligible for tax credit certification under the provisions of ORS 468.155 to ORS 468.190 and *former* ORS 316.097. The trial court denied defendants' motion, concluding that plaintiff is entitled to the certificate under ORS 468.150. With the parties reserving their rights to appeal, the court entered a stipulated judgment reversing the commission's rejection of plaintiff's application and remanded the matter to the commission.

Defendants assign error to the trial court's interpretation of ORS 468.150. That statute provides:

"After alternative methods for field sanitation and straw utilization and disposal are approved by the committee and the department, 'pollution control facility,' as defined in ORS 468.155, shall include such approved alternative methods and persons purchasing and utilizing such methods shall be eligible for the benefits allowed by ORS 468.155 to 468.190."

Both parties agree that plaintiff's straw storage sheds are approved alternative methods for field sanitation and straw utilization and disposal and that plaintiff is a person "purchasing and utilizing such methods."[4] Thus, there is no dispute that plaintiff qualifies under ORS 468.150. The only issue presented on appeal is whether ORS 468.150 automatically authorizes tax credit certification for any person purchasing and utilizing approved alternative methods or

---

[4] The trial court determined, and defendants no longer dispute, that leasing a facility to another qualifies as "utilizing" the facility.

whether the person must also meet the conditions and limitations established by ORS 468.155 to ORS 468.190 and *former* ORS 316.097.

Defendants argue that, in enacting ORS 468.150, the legislature merely intended to add a new type of pollution control facility to the then existing tax credit program. Consequently, facilities qualifying under ORS 468.150 are not only eligible for the same benefits as other pollution control facilities, but they are also subject to the same conditions and limitations. Those conditions and limitations are found in ORS 468.155 to ORS 468.190 and *former* ORS 316.097. According to defendants, under *former* ORS 316.097,[5] only the person who operates the facility may claim the credit.[6] Because plaintiff does not operate the facility, and consequently does not qualify for the tax credit, defendants reason that he is also not entitled to a certificate.

Plaintiff argues that the legislature intended to exempt those persons qualifying under ORS 468.150 from the conditions and limitations of ORS 468.155 to ORS 468.190. According to plaintiff, ORS 468.150 was intended to be a special dispensation for purchasing and utilizing qualifying facilities by providing only the "benefits" of ORS 468.155 to ORS 468.190. Consequently, the legislature intended to give a tax credit to anyone purchasing and utilizing qualifying straw storage sheds. He does not dispute that he does not meet the requirements of *former* ORS

---

[5] *Former* ORS 316.097 provided, in pertinent part:

"(1) A credit against taxes imposed by this chapter for a pollution control facility or facilities certified under ORS 468.170 shall be allowed if the taxpayer qualifies under subsection (4) of this section.

"* * * * *

"(4)(a) The taxpayer who is allowed the credit must be:

"(A) The owner of the trade or business that utilizes Oregon property requiring a pollution control facility to prevent or minimize pollution;

"(B) A person who, as a lessee or pursuant to an agreement, conducts the trade or business that operates or utilizes such property; or

"(C) A person who, as owner or lessee owns or leases a pollution control facility * * * defined in ORS 459.005."

[6] Facilities listed in *former* ORS 316.097(4)(a)(C) are excepted from this requirement. However, plaintiff does not contend that he qualifies for this exception.

316.097. Instead, he argues that *former* ORS 316.097 is "irrelevant" because that statute applies only if he is subject to the conditions and limitations of ORS 468.155 to ORS 468.190, and because "he is entitled to tax credits under ORS 468.150."

Based on the parties' arguments and our review of the statutes, it appears that there are really three issues: (1) Does ORS 468.150 authorize a tax credit independent of the other pollution control facility statutes?[7] (2) Is a person "purchasing and utilizing" an approved alternative method under ORS 468.150 entitled to a certificate without any of the conditions and limitations imposed by ORS 468.155 to ORS 468.190? (3) Is a certificate also dependent on conditions and limitations of *former* ORS 316.097? To resolve those issues we must interpret ORS 468.150.

In interpreting a statute, our task is to discern the legislature's intent. ORS 174.020; *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). Our first step is to examine the text and context of the statute, along with the rules of construction that bear directly on how to read the text and its interpretation in context. *Id.* at 611. Only if legislative intent is not clear from the text and context inquiry do we proceed to the next step of examining legislative history. *Id.* at 611-12.

Based on the text and context of ORS 468.150, we conclude that that statute does not, by itself, entitle a person to a tax credit. ORS 468.150 does not expressly grant a "tax credit;" nor does it specifically adopt by reference the "benefits" of any tax relief statute, such as *former* ORS 316.097. Instead, it refers only to the "benefits of ORS 468.155 to 468.190." Those statutes also do not grant a "tax credit." The only "benefit" provided under ORS 468.155 to ORS 468.190 is a certificate. ORS 468.170. That certificate, in turn, allows a person to claim a tax credit under the provisions of *former* ORS 316.097. Thus, ORS 468.150, by itself, does not confer

---

[7] Plaintiff applied for, and apparently still desires, a certificate from defendants. Indeed, plaintiff brought this action to require defendants to issue that certificate. However, plaintiff's argument that ORS 468.150 provides for a tax credit independent of *former* ORS 316.097 necessarily implies that he does not need a certificate. Despite this apparent incongruity, we will address the argument.

any entitlement to a tax credit. To interpret the statute otherwise would require us to read into ORS 468.150 tax credit language that is not there. *See* ORS 174.010 (courts are "not to insert what has been omitted").

■ Next, we consider whether plaintiff is subject to the limitations and conditions contained in ORS 468.155 to ORS 468.190. Plaintiff supports his position on two grounds. First, ORS 468.150 expressly provides only for "the *benefits* of ORS 468.155 to 468.190." The fact that it does not mention any limitations or conditions may indicate that the legislature did not intend any to apply. Second, ORS 468.150 was not made a part of ORS chapter 468 by the legislature. Instead, the legislature enacted it as a separate provision. ORS 468.150 was added to chapter 468 and given its current number by Legislative Counsel. The fact that the legislature did not place ORS 468.150 with the other pollution control facility provisions, let alone in the same chapter, could show its intent that straw facilities should be separate and apart from the other facilities. However, further analysis of the text and context of ORS 468.150 supports defendants' position.

At the outset, we note that the legislature provided that " 'pollution control facility,' as defined in ORS 468.155, shall include" the methods qualifying under ORS 468.150. When interpreting a statute, we must attempt to give effect to all of its terms. ORS 174.010. We can think of no reason to include methods qualifying under ORS 468.150 within the definition of a pollution control facility unless the legislature intended those methods to be part of the existing pollution control facility program.

■ Next, ORS 468.150 states that an otherwise qualified person is *"eligible* for benefits." Words of common usage should be given their plain, natural and ordinary meaning. *PGE*, 317 Or at 611. "Eligible" is defined, in pertinent part, as "fitted or qualified to be chosen or used: entitled to something * * *: worthy to be chosen or selected[.]" *Webster's Third New Int'l Dictionary* 736 (unabridged ed 1993). On the other hand, "entitle" is defined as "to give a right or legal title to: qualify (one) for something: furnish with proper grounds for seeking or claiming something[.]" *Id.* at 758. Although "eligible" and

"entitle" may in some cases be used interchangeably, "eligible" generally suggests that some other process or condition must be satisfied in order to receive the desired benefit. In other words, the use of "eligible" in ORS 468.150 indicates that the legislature may have intended that a person first meet the requirements of ORS 468.155 to ORS 468.190 before being entitled to a certificate.

Finally, ORS 468.150 refers to benefits of ORS 468.155 to ORS 468.190. In examining the text and context of ORS 468.150, we must also consider other related statutes. *PGE*, 317 Or at 611. Therefore, we have examined the provisions of ORS 468.155 to ORS 468.190 to determine just what benefits those statutes provide. That examination shows that most of the referenced statutes consist only of conditions, limitations and administrative provisions.[8] The only "benefit" conferred by those statutes is the certificate provided in ORS 468.170.

To read ORS 468.150 as granting only benefits and imposing no conditions, as plaintiff wishes us to do, would require us to give no effect to most of the referenced statutes. A more reasonable interpretation of the statute, and one that gives effect to all its terms, is that, by referring to the entire pollution control facility certification program, the legislature intended to have all of those provisions apply. Thus, facilities qualifying under ORS 468.150 would be eligible for the same benefits and subject to the same conditions as the other types of pollution control facilities.

Plaintiff argues that we should consider the provisions of ORS 468A.020, which provide, in part:

---

[8] ORS 468.155 defines a pollution control facility. ORS 468.160 states the legislative policy. ORS 468.165 specifies the information and fee that must accompany an application. ORS 468.167 allows for precertification in some cases. ORS 468.170 requires the commission to certify the actual cost of a facility and the portion of the actual cost properly allocable to pollution control. It allows some persons to elect property tax relief rather than income tax relief. It also provides the procedure for rejecting applications. ORS 468.180 prohibits the commission from issuing a certificate unless the facility meets the requirements of various statutes and chapters. ORS 468.185 lists the circumstances under which the commission may revoke a certificate. ORS 468.190 establishes the factors to use in determining the portion of actual cost allocated to pollution control.

"[T]he air pollution laws contained in ORS chapters 468, 468A and 468B do not apply to:

"(1) Agricultural operations and the growing or harvesting of crops and the raising of fowls or animals, except field burning which shall be subject to regulation pursuant to ORS 468.140, 468.150, 468A.555 to 468A.620 and this section."

Plaintiff argues that the fact that this statute refers only to ORS 468.140 and ORS 468.150, and no other section of ORS chapter 468, supports the interpretation that ORS 468.150 was not intended to be linked to ORS 468.155 to ORS 468.190.

In our interpretation of ORS 468.150, we may consider only related statutes. The current wording of ORS 468A.020 came from the same legislation that created ORS 468.150. As amended in that legislation, ORS 468A.020 (*former* ORS 468.290)[9] provided that "field burning * * * shall be subject to regulation pursuant to this act." Or Laws 1975, ch 559, § 3. The references to ORS 468.150 and other statutes were added by Legislative Counsel and show no legislative intent regarding the pollution control facility tax credit program. Also, ORS 468A.020 is concerned only with "air pollution laws" and the "regulation" of "field burning." It is clear that the provisions of ORS 468.150 and ORS 468.155 to ORS 468.190 are neither. Therefore, ORS 468A.020 is not related to ORS 468.150 and is not relevant to our inquiry.

We conclude that the text and context of ORS 468.150 clearly require plaintiff to meet the conditions and limitations of ORS 468.155 to ORS 468.190. We need not consider legislative history. However, we note that none of the legislative history cited by plaintiff would alter our conclusion.

That leaves only the question of whether defendants may impose the tax credit conditions of *former* ORS 316.097. We need not address that issue. Plaintiff does not dispute

---

[9] The 1975 legislation actually amended *former* ORS 468.290. No substantive changes relevant to our analysis have been made since that time. However, that statute was renumbered ORS 468A.020 by Legislative Counsel in 1991.

defendants' authority to reach into the tax law to determine who is eligible for a certificate.[10] He disputes defendants' ability to impose the conditions of *former* ORS 316.097 only on the grounds that defendants lack the authority to impose any conditions or limitations at all. Because we conclude that the conditions and limitations of ORS 468.155 to ORS 468.190 do apply to plaintiff, we must assume that defendant appropriately applied the provisions of *former* ORS 316.097.

In conclusion, ORS 468.150 does not, by itself, entitle plaintiff to a pollution control facility tax credit certificate. The trial court erred in reversing the commission's rejection of plaintiff's applications for pollution control facility tax credit certificates.

Reversed and remanded with instructions to affirm the commission's order rejecting plaintiff's tax credit certificate application numbers TC-3511 and TC-3954.

---

[10] Defendants' authority to look to the tax law to determine who is eligible for a certificate is not clear for various reasons. For example, ORS 468.180 lists various sections and chapters that the commission must consider before issuing a certificate. The tax credit statutes are not included in that list. Also, as previously discussed in note 1, the legislature mercifully chose to have tax issues decided by the Oregon Tax Court. The fact that the legislature has chosen to place the requirements of *former* ORS 316.097 in the tax statutes suggests that they should be applied when a person is actually claiming the tax credit, rather than at the certification level. That way, disputes on tax issues would end up in the appropriate court.